IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:13CR654 DN |
| Plaintiff, | : | |
| vs. | : | **MEMORANDUM DECISION AND ORDER** |
| ROBERT BRIAN WALTON, | : | |
| Defendant. | : | Judge David Nuffer |

This matter is before the court on Defendant's motion to suppress.[1] On January 6, 2014, an evidentiary hearing was held on the motion. The parties thoroughly briefed the issues and the court heard oral argument on February 26, 2014.

After a thorough review and consideration of the memoranda submitted by the parties, the court enters the following Memorandum Decision and Order.

## FINDINGS OF FACT

*Incident on November 5, 2012*

On November 5, 2012, at approximately 5:15 a.m., Officer Michael Ruff (Ruff) responded to a dispatch concerning a white Toyota 4Runner parked behind a building known as Fellowship Hall at 2060 South Windsor Street, Salt Lake City, Utah.[2] The call

---

[1] Docket no. 25, filed December 20, 2013.
[2] Transcript of evidentiary hearing at 7-8, docket no. 40, filed February 5, 2014..

indicated that the vehicle or person did not belong there.[3] Upon arrival, Ruff found, in an area near a dumpster behind the building and near the door to the kitchen of the building, a white Toyota 4Runner.[4] Ruff parked his patrol car approximately 15 to 20 feet away and at about a 45 degree angle from the SUV.[5] Using a spotlight and the take down lights in the light bar at the top of the car, Ruff observed that the SUV was full of personal belongings and that there was a dog moving around inside.[6] Ruff could not tell if anyone was inside the SUV.[7]

Within a few minutes, Officer Smith (Smith) arrived to offer backup assistance.[8] Smith approached the driver's side of the SUV and Ruff approached the passenger side.[9] Ruff immediately observed a man lying over the backseats extending into the cargo area.[10] The man peered at the officers with one eye open, as if he were asleep.[11]

Ruff identified himself as a police officer and asked the man to show his hands. The man did not comply.[12] The command to show his hands was given again along with commands to exit the SUV.[13] Ruff wanted to be able to speak to the man without him lying in the vehicle because he was concerned that the man may have a weapon or access to a weapon given the amount of personal items inside the SUV.[14] The man began

---

[3] *Id*. at 8.
[4] *Id*. at 10-11.
[5] *Id*. at 11-12.
[6] *Id*. at 11-12.
[7] *Id*. at 12.
[8] *Id*. at 13.
[9] *Id*.
[10] *Id*.
[11] *Id*. at 13-14.
[12] *Id*. at 14.
[13] *Id*. at 15-16.
[14] *Id*. at 16.

debating with the officers about why they were there and why they were contacting him.[15] The windows in the SUV were up, but Ruff could hear the man speak and was able to carry on a discussion with him.[16] Ruff did not attempt to open the vehicle or knock on the windows.[17] After about five or ten minutes, the man finally complied with the officer's request and exited the SUV.[18]

In response to questioning from Ruff, the man said his name was Trevor Johnson and gave his date of birth as July 14, 1968.[19] The man did not have any physical identification with him. In response to a question about whether he had identification from Utah, the man said "an old one" from Utah.[20] Ruff ran the information provided by the man through the police internal records system but was unable to verify the man's identity.[21]

Ruff asked the man a second time to verify his identity.[22] The man gave the same name and date of birth, said his middle name began with R, but that it didn't stand for anything, and indicated he was 44 years old.[23] Ruff told the man "[t]hat doesn't make sense" because his age and birth date did not match.[24] When Ruff asked for the man's social security number, the man said he did not know it.[25]

---

[15] *Id.* at 17.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at 18.
[20] *Id.* at 17-18.
[21] *Id.* at 19.
[22] *Id.*
[23] *Id.* at 20-21.
[24] *Id.* at 21.
[25] *Id.* at 20.

3

The officer told the man about the complaint that had been made by the person from Fellowship Hall.[26] The man asked Ruff to talk to the complainant to verify that he was, in fact, a member of Fellowship Hall.[27] Ruff went into the Hall to talk to the complainant.[28] The complainant said that she did not recognize the individual and there was no one with the last name of Johnson in the database.[29] Ruff placed the man in handcuffs because he could not identify himself and because of the trespassing complaint.[30]

At that point, the man identified himself as Robert Walton (Walton) and gave the officers another date of birth.[31] After a records check with the new information, the officers learned that Walton had a $150,000 felony warrant and other smaller warrants outstanding against him.[32] Ruff arrested Walton on the outstanding warrants and for providing false information to a police officer.[33]

Officer Ruff also decided to impound Walton's vehicle. Ruff ran the license plate and discovered it did not belong to the Toyota 4Runner.[34] The corresponding vehicle lacked registration and insurance.[35] Based on what he learned from the phony license plate, Ruff conducted a state impound.[36] Ruff did not ask Walton to produce the

---

[26] *Id.* at 21.
[27] *Id.*
[28] *Id.* at 22.
[29] *Id.*
[30] *Id.* at 22-23.
[31] *Id.* at 23.
[32] *Id.* at 23-24.
[33] *Id.* at 24.
[34] *Id.* at 30-31.
[35] *Id.* at 26.
[36] *Id.*

registration card for the 4Runner.[37] As the officers were putting Walton in the patrol car, he "rattle[d] off the phone number of [his] friend Paul" and a number for his uncle and asked the officers to have one of them pick up the dog.[38] Officer Ruff also ran the VIN number and learned that the vehicle was not registered or insured.[39] Officer Ruff did not note this in his report. Based on this information, Officer Ruff decided to impound the SUV.[40] Ruff testified that in his experience, he has never released a vehicle to a third party nor does he carry forms for release of a vehicle to a third party.[41]

By this time, Ruff was approaching the end of his shift, so he called another officer to the scene to complete the impoundment.[42] Ruff also called a tow truck and Animal Control.[43] Officer Eldon Oliver (Oliver) arrived a few minutes later.[44] Ruff told Oliver that Walton's vehicle was being impounded due to the owner's arrest and for improper registration.[45] Officer Oliver ran the license plate and VIN number but did not note the results in his report and does not recall the result of the inquiry.[46] Pursuant to police department policy, Officer Oliver conducted an inventory search of the SUV.[47] The inventory search took about twenty minutes.[48] Officer Oliver didn't itemize

---

[37] *Id.* at 34, 86.
[38] *Id*. at 87.
[39] *Id.* at 45-46.
[40] *Id.* at 25-26.
[41] *Id.* at 42-43.
[42] *Id.* at 24.
[43] *Id.* at 26-28.
[44] *Id.* at 48.
[45] *Id.* at 51-52.
[46] *Id.* at 52.
[47] *Id*. at 26-28, Government's Exhibit 1, docket no. 33, filed January 6, 2014.
[48] *Id.* at 57.

5

everything he found inside.[49] While inventorying the inside of the SUV, Officer Oliver found a backpack containing a hand gun and a cooler with drug paraphernalia and what appeared to be marijuana inside.[50] There was no testimony offered at the suppression hearing about the operability of the SUV.[51]

Investigator Troy Siebert with the Utah Federal Defender's Office testified that he contacted the Department of Motor Vehicles in October 2013 and learned that Walton had paid his registration fees and taxes for the 4Runner in January 2012; that the registration was good for one year; and that the registration was neither suspended nor revoked on November 5, 2012.[52] Siebert also testified that the license plate on the rear of the SUV did not match the registration and that the SUV was uninsured on the date of Walton's arrest[53]

Walton conceded that the plates on the SUV did not match his vehicle and that he had no "reason to doubt" Siebert's testimony that the SUV was uninsured.[54] Walton indicated that the plates for the SUV were in the back passenger side of the vehicle underneath a cardboard box because he was attempting to avoid law enforcement.[55]

Jason Bowen, a friend of Walton's, eventually retrieved Walton's personal property after his arrest and brought it to Bowen's house in Provo Canyon. Bowen also paid a towing fee to have the SUV towed to his home, but by that time, the vehicle

---

[49] *Id.*
[50] *Id.* at 49-50.
[51] *Id.* at 121-22.
[52] *Id.* at 81.
[53] *Id.* at 81-82.
[54] *Id.* at 88-89.
[55] *Id.* at 106-07.

6

couldn't be located.[56] Bowen indicated that if asked he probably would have driven the SUV from the scene or had it towed.[57] Similarly, Paul Mulder, another friend of Walton's, testified that if he had been called to the scene, he would have taken care of Walton's property and dog and made arrangement for the SUV.[58] Mulder lived less than five minutes away from Fellowship Hall on the date of Walton's arrest.[59]

*Incident on May 9, 2013*

Deputy District Attorney Joseph Hill represents Salt Lake County in three prosecutions against Walton.[60] On May 9, 2013, while at a hearing, a public defender assigned to the court approached Hill and said that Walton wanted to see him in the holding cell.[61] Walton was representing himself at that time.[62] A bailiff and other prisoners were in the holding cell.[63] Hill told Walton that he "was not his attorney," that "he represented the state's interests," and that the things he said "could be used against him in court."[64] Walton was very upset over the amount of bail that had been set in his cases. In attempting to explain why bail was so high, Hill mentioned the fact that Walton had been found with a gun.[65] Hill told Walton that he should be more concerned about

---

[56] *Id.* at 96, 99.
[57] *Id.* at 98-99.
[58] *Id.* at 103.
[59] *Id.* at 102.
[60] *Id.* at 59. Prior to November 9, 2013, Walton was represented by Mr. Hamilton in two state cases pending against Walton. On April 8, 2013, Hamilton withdrew as counsel, and sometime later, Mr. Cunningham was appointed to represent Walton. *Id.* at 74-75, Defendant's Exhibits A & B, docket no. 33, filed January 6, 2014.
[61] *Id.* at 60- 62.
[62] Defendant's Exhibits A and B.
[63] *Id.* at 62-63.
[64] *Id.* at 63.
[65] *Id.* at 63-64.

the firearm case because it carried a "potentially higher penalty."[66] Hill testified that Walton said he didn't intend to hurt anyone with the gun except perhaps himself, perhaps to blow his brains out. Walton told Hill the gun was a family gun and was only used for hunting.[67] Hill testified that he and Walton did not discuss a plea agreement at that time but they did discuss his various charges and some of the facts of each case.[68] Plea discussions occurred later after standby counsel was appointed.[69]

## ANALYIS

There are two issues before the Court. The first issue is whether the impoundment of the defendant's SUV was reasonable under the Fourth Amendment. The second issue is whether the inventory search of the defendant's SUV followed standardized procedures.[70]

### *Impoundment*

While there was no state authority or authority under the Salt Lake City ordinance 12.96.10 for the impoundment of the vehicle, the court finds that the impoundment was authorized by Salt Lake City police policy III-400 which allows impoundment to protect the vehicle and its contents until the owner can retake possession of it. Under the Salt Lake City Police Department's impoundment policy, officers "may impound vehicles as a means of . . . protecting the vehicle and its contents until the owner can take possession of it."[71] The policy further states: "To avoid needless expense and inconvenience to the vehicle

---

[66] *Id*. at 70-71.
[67] *Id*. at 64-65.
[68] *Id.* at 70-71.
[69] *Id*. at 65-67.
[70] Id.
[71] Gov. Exhibit 1.

8

owner, officers shall use discretion in determining whether or not a vehicle should be impounded."[72]

The defendant's SUV was parked on the property of Fellowship Hall. The property owner did not want the vehicle to remain there. The SUV had the wrong plates mounted on it and the vehicle was uninsured. The driver was arrested and taken into custody, and the SUV could not reasonably be abandoned at this location. "Where a driver is arrested and there is no one immediately on hand to take possession of the motor vehicle, officials have a legitimate non-investigatory reason to impound the car."[73] The court finds that the impoundment was not a pretext for an investigation.

The defendant argues that the impoundment was unreasonable because there might have been third parties willing and able to take custody of the vehicle. This argument is unpersuasive. The defendant had twice provided the officers a false name and date of birth. The defendant had a false license plate attached to his SUV. It was reasonable for the officers not to follow up on the defendant's request to contact a third party. In light of the fact that defendant was living in this car in the back of a building where he had no permission to be, it would seem unlikely to the officers that defendant would have someone who would be willing to take all this property.

Balancing the interests of the landowner and of Mr. Walton and his property, the impoundment was justified. The defendant argues that since Officer Ruff has never released an arrestee's vehicle to a third party that the impoundment of his vehicle was per se unreasonable. This argument is also unpersuasive. Whether Officer Ruff has ever released a

---

[72] Gov. Exhibit 1.
[73] *Vega–Encarnacion v. Babilonias*, 344 F.3d 37, 41 (1st Cir. 2003).

vehicle to a third party is not pertinent here. There was no evidence presented in regard to any other vehicle Officer Ruff has impounded and no evidence as to the number of those impoundmentss. There is no basis to find that there was a blindness to the duty of discretion.

Impounding the defendant's SUV was a proper exercise of law enforcement's community caretaking authority.[74] Accordingly, the impoundment was reasonable under the totality of the circumstances and under the Fourth Amendment.

*Inventory Search*

The defendant has also challenged the sufficiency of the inventory. Inventory searches are a "well-defined exception" to the search warrant rule.[75] "[I]nventory searches are routine noncriminal procedures [and] they are to be judged by the standard of reasonableness under the Fourth Amendment."[76] "After lawfully taking custody of property, police may conduct a warrantless search of that property if the owner's diminished expectation of privacy is outweighed by the government's interest in satisfying one of three purposes: (1) protecting the owner's property while it is in police custody; (2) protecting the police against claims of lost or stolen property; or (3) protecting the police from potential danger."[77] Inventory searches are to adhere to standard procedures.[78]

---

[74] *Colorado v. Bertine*, 479 U.S. 367, 373 (1987); *United States v. Hunnicutt*, 135 F.3d 1345, 1351 (10th Cir. 1998).
[75] *Bertine*, 479 U.S. at 371.
[76] *Kornegay*, 885 F. 2d at 716.
[77] 41 Geo. L.J. Ann. Rev. Crim. Proc. 114 (2012).
[78] *South Dakota v. Opperman*, 428 U.S. 364, 375-76 (1976).

Inventory searches under Salt Lake City Police Department policy are governed by section III-730,[79] which states in relevant part:

> No probable cause is needed during a lawful inventory of a vehicle to look in locked glove-boxes, trunks, briefcases or elsewhere. Inventories are administrative in nature and are a caretaking function of the Department. Impounded vehicles must be examined and an inventory made of the contents. This includes locked glove-boxes, trunks, and items inside the impounded vehicle. Such examination is for the purpose of safekeeping and is creating an accurate inventory of the vehicle's contents.

The policy also states that "[a]n inventory of a vehicle may not be used as a pretext to conduct a search."[80]

Officer Oliver performed the inventory in accordance with department policy.[81] Officer Oliver filled out all available space on the inventory sheet, including space beyond that provided for listing contents. Officer Oliver listed the major items that he found and took 20 minutes to conduct the inventory. The court finds that there was reasonable effort on the inventory. As stated previously, there is no evidence suggesting that Officer Ruff's decision to impound the SUV was predicated upon an investigative purpose or was conducted in bad faith.

---

[79] *See* docket no. 44-1, filed February 14, 2014..
[80] *Id*.
[81] Tr. at 49.

The officers followed standardized procedures in conducting the inventory search of the defendant's SUV. Further, the inventory was reasonable under the Fourth Amendment. Accordingly, the defendant's motion to suppress is DENIED.

DATED this 25th day of March, 2014.

_____
DAVID NUFFER
United States District Judge